**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JONATHAN M. GOULD, *on behalf of* *St. Louis-Kansas City Carpenters' Regional* *Council (Mid-America Carpenters Regional* *Council),* | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) )    No. 4:22-CV-255 RLW |
| DOUGLAS J. MCCARRON, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, | ) ) ) ) |
| Intervenor. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Jonathan M. Gould's Motion for Leave to File a Verified Complaint pursuant to 29 U.S.C. § 501(b) of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA").  Mr. Gould, who is proceeding without the assistance of counsel, seeks to bring suit on behalf of the members of "St. Louis-Kansas City Carpenters' Regional Council (Mid-America Carpenters Regional Council)"[1] against Douglas J. McCarron, the General President of the United Brotherhood of Carpenters and Joiners of America ("UBC").

---

[1] The St. Louis-Kansas City Carpenters' Regional Council, (hereafter referred to as STLKCCRC), is no longer in existence.  In September 2021, the STLKCCRC was dissolved, and its locals were assigned to the Chicago Regional Council of Carpenters (the "Chicago Council"). The Chicago Council was then renamed the Mid-America Carpenters Regional Council (the "Mid-America Council").  Mr. Gould was a member of STLKCCRC and is currently a member of the Mid-America Council.

Mr. Gould alleges Mr. McCarron breached his fiduciary duties to members of STLKCCRC by failing to act when it was brought to his attention that officers of STLKCCRC were misappropriating union funds.

On April 7, 2022, the UBC filed a motion to intervene in this action, which Mr. Gould opposed.  The Court allowed the UBC to intervene to defend its interests in the case.[2] The UCB filed a Memorandum in Opposition to Mr. Gould's Motion for Leave to File a Verified Complaint, (ECF No. 11), but Mr. Gould did not file a reply memorandum in support of his motion, and the time to do so has expired.  Defendant Douglas J. McCarron did not respond to Mr. Gould's Motion for Leave to File a Verified Complaint, and the time to do so has expired.  Therefore, Mr. Gould's motion is ripe for review.  For the reasons that follow, the Court denies Mr. Gould's Motion for Leave to File a Verified Complaint pursuant to 29 U.S.C. § 501(b)

## I.   Background

This matter involves a long-time dispute over the governance of a regional council of the UBC.  Mr. Gould seeks damages on behalf of STLKCCRC, now known as the Mid-America Council, against Defendant McCarron, the General President of the UBC, an international labor organization headquartered in Washington, D.C., for alleged breaches of his fiduciary duties to the regional council and its members.  Mr. Gould has a long history with the STLKCCRC, and he has brought a number of lawsuits against the UBC and other union entities and officers, the background of which are relevant to the issues at bar.

### A.  Relevant Prior Litigation

---

[2]This case was initially assigned to the Honorable Jean C. Hamilton.  Judge Hamilton took inactive status, and on December 15, 2022, the Clerk of Court transferred this case to the undersigned.  (ECF No. 26).

Mr. Gould at one time worked as the Business Agent of the STLKCCRC.  In August 2014, he elected to run for Executive Secretary-Treasurer ("EST"), the highest union position at a regional council, against the then-EST, Terrance Nelson.  Mr. Gould was not elected EST of STLKCCRC and following his defeat, he was not reappointed Business Agent.  Mr. Nelson continued as EST of STLKCCRC until September 2015, when Al Bond became EST of the regional council.

In 2016, Mr. Gould filed suit in the Circuit Court of the City of St. Louis against the STLKCCRC and its officers, including Messrs. Nelson and Bond, among others, for wrongful termination, defamation, injurious falsehood, and intentional infliction of emotional distress. Gould v. St. Louis-Kansas City Carpenters Regional Council, et al., No. 1622-CC09954, (22nd Jud. Cir. State of Mo.) ("Wrongful Termination Lawsuit").  Mr. Gould's wrongful termination claims were based on his alleged whistleblower reporting of what he claims were violations of § 501 of the LMRDA.  Id. In his state court petition, Mr. Gould summarized his allegations of § 501 misappropriations giving rise to his Wrongful Termination Lawsuit as follows:

> expenditures on: (1) flying family and friends to [STLKCCRC] conventions or conferences; (2) expenses for family and friends at [STLKCCRC] conventions or conferences; (3) alcohol expenses at conventions and conferences; (4) [STLKCCRC] vehicle policy; (5) [STLKCCRC] 'training seminars'; (6) [STLKCCRC] 'per diem'; (7) non-business related lunches; (8) concert tickets; (9) musicals; (10) plays; (11) comedy shows; (12) sporting events; (13) sightseeing tours; (14) sea world/zoo; (15) souvenirs; (16) gifts; (17) loans in excess of $2000.00 to [STLKCCRC] employees; (18) non-business related alcohol expenses; (19) reimbursement of medical insurance deductibles; (20) country club membership; (21) birthday and retirement parties; (22) vehicle insurance deductibles for accidents; and (23) other incidentals being paid for by [STLKCCRC] for Business Agents, Executive Board members, employees, and their families.

(ECF No. 11, Ex. 3 at 18-19).

3

In 2018, Mr. Gould moved to amend his petition in the Wrongful Termination Lawsuit to add a claim under § 501 directly and a claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").  The state court denied Mr. Gould's motion for leave to file an amended petition with regard to the § 501 claim, because he neither filed a verified application nor had shown "good cause" for bringing the claim.  Mr. Gould, however, was allowed leave to amend his petition to allege a RICO claim.

Following the addition of the RICO claim, the defendants in the Wrongful Termination Lawsuit removed the cause of action to federal court based on federal question subject matter jurisdiction.  Gould v. St. Louis-Kansas City Carpenters Regional Council, et al., No. 4:18-CV-936 AGF (E.D. Mo.).  Once in federal court, Mr. Gould sought to voluntarily dismiss the RICO claim and moved to remand the case to state court.

On August 2, 2018, the Honorable Audrey G. Fleissig remanded the case back to state court.  In the remand order, Mr. Gould was admonished for gamesmanship and forum shopping.  (4:18-CV-936 AGF, ECF No. 34).  Judge Fleissig also awarded the STLKCCRC $11,568.00 in attorney's fees and costs associated with the removal.  Following the filing of another Amended Petition in state court, the defendants filed a motion to dismiss, which was granted.  The dismissal of the Mr. Gould's Wrongful Termination Lawsuit was affirmed by the Missouri Court of Appeals for the Eastern District of Missouri.  Gould v. St. Louis-Kansas City Carpenters' Reg'l Council, 639 S.W.3d 1 (Mo. Ct. App. 2020)

While the Wrongful Termination Lawsuit was pending, in January 2018, Mr. Gould sent a request to Mr. Bond for an accounting to recover damages pursuant to 29 U.S.C. § 501(b).  Mr. Gould raised allegations that officers at STLKCCRC were misappropriating union funds.  In

4

response to Mr. Gould's demand, STLKCCRC retained Calibre, an accounting firm, to perform an audit and accounting.  Calibre investigated Mr. Gould's allegations and in August 2018, the accounting firm submitted its findings to the regional council.  While Calibre did find instances of improper expense reimbursements, for the most part it found that STLKCCRC's expense policy complied with Department of Labor and Internal Revenue Service requirements.

Mr. Gould was unsatisfied with Calibre's accounting and report.  On April 16, 2019, Mr. Gould filed in this district a Verified Application for Leave to File Verified Complaint Under 29 U.S.C. § 501(b) against Mr. Bond.  Gould v. Bond, No. 4:19-CV-925 DDN ("Initial § 501 Action").  In his Initial § 501 Action, Mr. Gould sought leave to assert claims against Mr. Bond for breach of his fiduciary duties to STLKCCRC based on allegations of misappropriating union funds through improper reimbursement of expenses for the personal benefit of union officers.  In the Initial § 501 Action, Mr. Gould alleged the following misappropriations of funds, which track the allegations of misappropriations in Mr. Gould's Wrongful Termination Lawsuit:

> a. flying family and friends to [STLKCCRC] conventions or conferences; b. expenses for family and friends at [STLKCCRC] conventions or conferences; c. alcohol expenses at conventions and conferences; d. [STLKCCRC] vehicle policy; e. [STLKCCRC] "training seminars;" f. [STLKCCRC] "per diem;" g. non-business related lunches; h. concert tickets; i. musicals; j. plays; k. comedy shows; l. sporting events; m. sightseeing tours; n. sea world/zoo; o. souvenirs; p. gifts; q. loans in excess of $2000.00 to [STLKCCRC] employees; r. non-business related alcohol expenses; s. reimbursement of medical insurance deductibles; t. country club membership; u. birthday and retirement parties; v. vehicle insurance deductibles for accidents; w. Dinner / Lunch / Drinks reimbursed by [STLKCCRC] despite receipts missing: 1) who the transaction was with; 2) what the transaction was for; 3) when the transaction occurred; 4) where the transaction occurred; and 5) why the transaction occurred ("5 Ws"); and x. other incidentals being paid for by the [STLKCCRC] for [STLKCCRC] Business Agents, [STLKCCRC] Employees, [STLKCCRC] Executive Board Members and their families.

(4:19-CV-925 DNN, ECF No. 1 at 4-5).

The STLKCCRC intervened in Mr. Gould's Initial § 501 Action, and on August 19, 2019, the Honorable David D. Noce entered an Order denying Mr. Gould leave to file his proposed Verified Complaint.  Judge Noce found that Mr. Gould failed to satisfy a condition precedent to bringing suit – that the union failed or refused to take appropriate action in response to Mr. Gould's request for an accounting to recover damages.  See Gould v. Bond, No. 4:19-CV-925 DDN, 2019 WL 3890776, at *2 (E.D. Mo. Aug. 19, 2019).  The Memorandum and Order denying Mr. Gould leave to file a verified complaint states:

> The Court finds that plaintiff has failed to meet a statutory prerequisite: plaintiff has not shown that the union failed or refused to make a legitimate accounting. In January 2018, plaintiff made a demand to STLKCCRC, and the Union contracted an independent accounting firm, was audited, and was reimbursed for any inadequately documented expenses.

(4:19-CV-925 DDN, ECF No. 33 at 6-7).  Judge Noce noted that while the accounting revealed some discrepancies, they were resolved through further documentation or reimbursement.  (Id.)  Mr. Gould had argued that the accounting was so limited and biased it amounted to a sham.  Judge Noce did not find Mr. Gould's argument to be persuasive.  Judge Noce noted that the accounting addressed the points Mr. Gould raised in his request for an accounting, and Mr. Gould "failed to show an objectively reasonable ground for belief that the union's accounting or other action was not legitimate."  (Id.).  Mr. Gold filed an appeal, and on June 14, 2021, the Eighth Circuit affirmed Judge Noce's order denying Mr. Gould's motion for leave to file a verified complaint under § 501(b).  See Gould ex rel. St. Louis - Kansas City Carpenters Reg'l Council v. Bond, 1 F.4th 583 (8th Cir. 2021).

On September 24, 2021, following complaints of misconduct at STLKCCRC, UBC President Douglas J. McCarron dissolved the STLKCCRC and reassigned its locals to the

Chicago Council, which was renamed the Mid-America Council.  On October 5, 2021, Mr. Gould filed suit, without the assistance of counsel, in this district against the UBC and Mr. McCarron to stop the so-called "merger."  Gould v. United Brotherhood of Carpenters & Joiners of America and Douglas J. McCarron, Case No. 4:21-CV-1187 RLW ("Merger Lawsuit").[3] According to his complaint in the Merger Lawsuit, Mr. Gould was unhappy with what he referred to as the "merger," because he believed Mr. McCarron was using the consolidation of the two regional councils to coverup malfeasance by STLKCCRC officers.  Mr. Gould failed to timely respond to the defendants' motion for summary judgment in the Merger Lawsuit and following the entry of an order to show cause, on September 2, 2022, the Court dismissed the cause of action without prejudice for Mr. Gould's failure to prosecute and comply with the Court's orders.

On March 10, 2022, the Mid-America Council filed a lawsuit in this district pursuant to 29 U.S.C. § 501 against Mr. Bond for breach of his fiduciary duties seeking, among things, reimbursement for unauthorized expenditures.  Mid-America Carpenters Regional Council v. Bond, et al., Case No. 4:22-CV-291 SEP ("Mid-America § 501 Action").  In the Mid-America § 501 Action, Mr. Bond is accused of misappropriating over $4 million in STLKCCRC's assets to purchase unauthorized billboards, in addition to over $6,000 for personal expenses for medical bills and theater tickets, and approximately $18,000 for an unlawful retroactive salary increase. Mr. Gould has moved to intervene in the Mid-America § 501 Action, which remains pending before the Honorable Sarah E. Pitlyk.

---

[3]Mr. Gould was represented by counsel in his Wrongful Termination Lawsuit and Initial § 501 Action.

### B.  Allegations in Case at Bar

In the case at bar, Mr. Gould seeks to bring this action on behalf of the STLKCCRC, now part of the Mid America Council and its members, against Mr. McCarron for breaches of his fiduciary duties under 29 U.S.C. § 501.  Mr. Gould alleges Mr. McCarron violated his fiduciary duties by

> (1)  allowing misappropriation of [STLKCCRC] and UBC funds;
>
> (2)  ignoring repeated attempts from Mr. Gould to notify Mr. McCarron and the UBC that former ESTs Terry Nelson and Al Bond were leading efforts to misappropriate [STLKCCRC] and UBC funds; [and]
>
> (3) failing to take action against similar, systematic acts of misconduct perpetrated by multiple [STLKCCRC] officers and agents.

(ECF No. 1 at 2).

Mr. Gould alleges Mr. McCarron breached his 29 U.S.C. § 501 fiduciary duties by allowing others to misappropriate STLKCCRC and UBC dues monies.  Mr. Gould does not allege that Mr. McCarron misused union funds.  Rather, he alleges that Mr. McCarron "was aware of and complicit in" Messrs. Nelson's and Bond's breaches of fiduciary duty in that Mr. McCarron was aware STLKCCRC's expense policies and the LMRDA were being violated. (ECF No. 1 at 22, 25).  Mr. Gould contends he brought these breaches to the General President's attention as recently as October 2021, but Mr. McCarron ignored his appeal and demands under § 501(b).  Mr. Gould further alleges Mr. McCarron has failed to properly account for STLKCCRC and UBC funds or pursue other action.  More specifically, "The UBC, General Executive Board, and Mr. McCarron as [General President], refused and/or failed to sue or recover damages or secure a forensic account[ing] by a verified independent CPA or firm, or to

seek appropriate relief within a reasonable time after [Mr. Gould]'s request was made on October 3, 2021." (ECF No. 1 at 25).

For relief, Mr. Gould requests that the Court enter judgment "in favor of and for the benefit of" the STLKCCRC/UBC and against Mr. McCarron for actual damages believed to exceed $10 million. (ECF. No. at 26). Mr. Gould also requests that the Court issue an injunction against Mr. McCarron prohibiting him from committing wrongful and negligent acts. Finally, Mr. Gould requests costs and attorney's fees, although he is proceeding without the assistance of counsel.

## II. Discussion

### A. Threshold Consideration

As an initial matter, Mr. Gould seeks to bring suit on behalf of STLKCCRC and its members. Mr. Gould, however, is proceeding pro se without the assistance of counsel.[4] While federal law authorizes a plaintiff to plead his own case personally, he cannot represent another person or entity in court. Iannaccone v. L., 142 F.3d 553, 558 (2d Cir. 1998) ("because pro se means to appear for one's self, a person may not appear on another person's behalf in the other's cause. A person must be litigating an interest personal to him."); Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994) (a nonlawyer has no right to represent another entity in a court of the United States); Lewis v. Lenc-Smith Mfg. Co., 784 F.2d 829, 830 (7th Cir.

---

[4] Mr. Gould paid the filing fee and has not moved for the appointment of counsel. But even if he had asked for an attorney, Mr. Gould would not be entitled to one. First, there is no constitutional or statutory right to appointed counsel in a civil case. Ward v. Smith, 721 F.3d 940, 942 (8th Cir. 2013); Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1004 (8th Cir. 1984). Second, Mr. Gould is not proceeding in forma pauperis. When certain circumstances are met, the Court may appoint counsel to indigent litigants who are proceeding in a civil matter in forma pauperis. 28 U.S.C. § 1915(e)(1) (a court "may request an attorney to represent any person unable to afford counsel.").

1986) (stating that a person who is not licensed to practice law may not represent another individual in federal court).   And, under Missouri law, a non-attorney representing another person in court is engaged the unauthorized practice of law, which can carry criminal penalties. See Mo. Rev. Stat. § 484.020.1.  Mr. Gould may not engage in the practice of law on behalf of others.[5]  See Jones ex rel. Jones v. Corr. Med. Servs., Inc., 401 F.3d 950, 952 (8th Cir. 2005); Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996); Knoefler, 20 F.3d at 348; United States v. Van Stelton, 988 F.2d 70, 70 (8th Cir. 1993).

A suit under 29 U.S.C. § 501(b) is necessarily a suit filed on behalf of another entity, namely the union.  Section 501(b) provides in relevant part:

> [a] member may sue [a union] officer … in any district court of the United States … to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization.

29 U.S.C. § 501(b).  As the claims in Mr. Gould's proposed Verified Complaint are not personal to him, but rather are claims on behalf of another entity, the union, Mr. Gould cannot pursue this cause of action on his own without an attorney.  Knoefler, 20 F.3d at 348.

While there are a plethora of cases holding a pro se litigant may not represent the interests of other entities, the Court has not uncovered a case holding a pro se litigant may not pursue a § 501(b) claim on behalf of a union.  See, e.g., Simon v. Hartford Life, Inc., 546 F.3d 661 (9th Cir. 2008) (ERISA participant was not authorized to pursue claim pro se in representative capacity on behalf of plan); Stoner v. Santa Clara Cnty. Off. of Educ., 502 F.3d 1116, 1126–27 (9th Cir. 2007) (qui tam action brought "for the person and for the United States

---

[5]As discussed above, Mr. Gould has brought suit in this district on behalf of his regional council in the past, but he was presented by counsel.  See Gould v. Bond, No. 4:19-CV-925 DDN, 2019 WL 3890776, at *1 (E.D. Mo. Aug. 19, 2019), aff'd sub nom. Gould on behalf of St. Louis - Kansas City Carpenters Reg'l Council v. Bond, 1 F.4th 583 (8th Cir. 2021).

government" cannot be pursued <u>pro</u> <u>se</u> ); <u>Jones ex rel. Jones</u>, 401 F.3d at 951–52 (non-attorney administrator of decedent's estate may not proceed <u>pro</u> <u>se</u> on behalf of estate); <u>In re Am. W. Airlines</u>, 40 F.3d 1058, 1059 (9th Cir. 1994) (holding that a non-attorney may not appear on behalf of a partnership); <u>Phillips v. Tobin</u>, 548 F.2d 408, 415 (2d Cir. 1976) (<u>pro</u> <u>se</u> litigant may not prosecute a shareholder's derivative action); <u>Oxendine v. Williams</u>, 509 F.2d 1405, 1407 (4th Cir. 1975) (<u>pro</u> <u>se</u> prisoner may not bring a class action on behalf of fellow prisoners).  The Court believes the doctrine extends to this case, but to the extent it does not, and Mr. Gould can pursue a § 501 claim for breach of fiduciary duty on his own without an attorney, the Court turns to the merits of Mr. Gould's Motion for Leave to File a Verified Complaint under 29 U.S.C. § 501(b).

**B.  Prerequisites for Filing Suit under 29 U.S.C. § 501(b)**

Section 501 of the LMRDA creates a federal cause of action for individual union members to sue on behalf of the union if a union officer has violated his or her fiduciary duties to the labor organization and its members.  29 U.S.C. § 501(b).  Under § 501(a), fiduciary duties are broadly defined, and in an attempt to balance the interests of union members with protecting union officers from unjust harassment, the statute provides that certain conditions must be met before a union member may proceed with a claim under § 501(b).  <u>Gould ex rel. of St. Louis - Kansas City Carpenters Reg'l Council</u>, 1 F.4th at 589 (citing <u>Hoffman v. Kramer</u>, 362 F.3d 308, 314 (5th Cir. 2004); and <u>Coleman v. Bhd. of Ry. & S. S. Clerks, Freight Handlers, Exp. & Station Emp.</u>, 340 F.2d 206, 208 (2d Cir. 1965)).

To proceed on an action under § 501(b), the union member must obtain, upon verified application, leave of court for good cause shown.  "No [ ] proceeding shall be brought except

upon leave of the court obtained upon verified application and for good cause shown [ ]." 29 U.S.C. § 501(b).  Additionally, the union member must have requested that the union act in response to the breach of fiduciary duties.  And if "the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so . . . , [the] member may sue such officer, agent, shop steward, or representative in any district court of the United States [ ] to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization."  Id.  Accordingly, to pursue a § 501(b) claim, not only must the member obtain leave of court for good cause shown, but the member must also show that he or she requested that the union take action in response to the alleged breach of fiduciary duties, and the union refused to respond within a reasonable amount of time.  All of these prerequisites must be met for Mr. Gould to pursue a § 501 claim.  See Gould ex rel. of St. Louis - Kansas City Carpenters Reg'l Council, 1 F.4th at 589 (citing Horner v. Ferron, 362 F.2d 224, 231 (9th Cir. 1966)).

### C.    Mr. Gould Has Not Met the § 501(b) Prerequisites

Mr. Gould asserts that he has made a number of demands on Mr. McCarron to take action against misconduct occurring at STLKCCRC.  In proposed Verified Complaint, Mr. Gould states that on October 3, 2021, he sent a letter to Mr. McCarron bringing a number of violations by officers at STLKCCRC to the General President's attention.  Mr. Gould's alleges that his letter contained the following list of illegal conduct at STLKCCRC:

> (1) paying to fly spouses and guests to conventions and conferences; (2) paying expenses for spouses and guests at conventions and conferences; (3) paying for unlimited alcohol purchases at conventions and conferences; (4) paying for nonbusiness-related meals, alcohol, concerts, musicals, sporting events, clothing, spa treatments, golf, and incidentals; (5) paying for and granting reimbursements to STLKCCRC employees via "petty cash" that did not meet

12

> LMRDA reporting requirements; (6) increasing salaries via an illegal vehicle policy that served to fraudulently inflate the UBC pension of STLKCCRC members; (7) increasing Mr. Bond's salary by approximately $85,000 in May 2017 by tricking or coercing STLKCCRC delegates into approving the increase; (8) income tax evasion by not reporting nonbusiness-related perks/benefits as income on employees' W-2s; and (9) receipts lacking proper documentation as required by STLKCCRC policy and the LMRDA.

(ECF No. 1 at 15).  Many of the listed violations track the allegations of malfeasance in Mr. Gould's Wrongful Termination Lawsuit and his Initial § 501 Action.

Mr. Gould asserts that in his letter, he "demanded Mr. McCarron secure a forensic accounting and recover damages on behalf of the [STLKCCRC] and UBC." (ECF No. 1 at 2). More specifically, Mr. Gould alleges that he demanded Mr. McCarron take the following action:

> [That] Mr. McCarron [ ] sue Mr. Bond to recover damages, secure forensic accounting of [STLKCCRC] financials under Mr. Bond's leadership, show rank-and-file members audit reports and communications and documents used to produc[e] audits, cease the merger of the [STLKCCRC] into Chicago, declare an official Trusteeship of the [STLKCCRC] under the conditions of the UBC constitution and the LMRDA, retain all [STLKCCRC] records, prefer internal union charges against Mr. Bond, report any illegal activity to proper agencies, hold other [STLKCCRC] Executive Board members and employees responsible for any violations of the UBC constitution or laws they may have broken, allow Mr. Gould to assist and witness any forensic audits, commission a third-party investigation into the years long effort by Mr. Nelson, Mr. Bond, and professional service providers to coverup fraud.

(Id. at 13).[6] Mr. Gould asserts Mr. McCarron failed to respond to his letter by November 5, 2021.  (ECF No. 3 at 4).

The UBC admits in its opposition that Mr. McCarron did receive correspondence from Mr. Gould dated October 3, 2021, in which Mr. Gould demanded that the UBC, Mr. McCarron, Mid-America Council, and the EST of Mid-America Council take action to investigate and

---

[6]Mr. Gould indicates that a copy of the letter was attached to his proposed Verified Complaint as an exhibit.  A copy of the October 3, 2021 letter, however, was not included in any of his filings for the Court.

remediate acts of misappropriation committed by Messrs. Nelson and Bond at the STLKCCRC. According to the UBC, Mr. Gould also demanded that the UBC cease the "merger" between STLKCCRC and the Chicago Council.  (ECF No. 11, Ex. 9 at 1).

The UBC asserts that on January 11, 2022, it responded to Mr. Gould's demand letter. According to the UBC, it denied Mr. Gould's request that the merger between the regional councils cease.  In its response, the UBC noted that Mr. Gould had failed to appeal the merger to the UBC General Executive Board as required by Section 6-A of the UBC Constitution.  (ECF No. 11 at 11).  The UBC further states that Mr. Gould's request that the dissolved STLKCCRC be placed under trusteeship was also denied.  (Id.).  "Finally, [Mr.] Gould was advised that UBC attorneys would consider meeting with him to discuss relevant, cognizable issues that [Mr.] Gould may have.  [Mr.] Gould appears to have since accepted this invitation, and arrangements for a discussion are being contemplated.  (Id.) (quotations omitted).

In the meantime, the UBC asserts that action has been taken in response to allegations of malfeasance at STLKCCRC, which "effectively respond to Mr. Gould's demands."   (Id.) According to the UBC, Mr. McCarron directed that there be an examination of STLKCCRC's books by a certified public accountant ("CPA").  The UBC engaged the services of Terrence Mooney, CPA, to conduct a comprehensive audit of STLKCCRC's books and records from August 1, 2018, through September 27, 2021, a fact which Mr. Gould does not dispute.[7]  On October 27, 2021, Terrence Mooney presented a report of his findings to the UBC, which

---

[7]While not alleging that the audit and accounting were a sham, as he did in his Initial § 501 Action, Mr. Gould does state that he has "little faith in the investigation and purported review of [STLKCCRC] records by Mr. Mooney."  (ECF No. 1 at 16).  In support of his opinion, Mr. Gould alleges that "Mr. Mooney's office serves as the registered address for UBC owned Jobsite Steel. Jobsite Steel has been subpoenaed as part of a federal investigation into the UBC under Mr. McCarron's leadership."  (Id.).

uncovered several expenses incurred by STLKCCRC that were not authorized.  As a result of this investigation, as well as an investigation later conducted by the Mid-America Council, the UBC and Mr. McCarron took action against Mr. Bond.

First, UBC states that on March 2, 2022, the UBC brought internal union charges against Mr. Bond seeking reimbursement for improper and unauthorized expenditures.  The charges also sought expulsion of Mr. Bond as a member of the UBC.  According to the UBC, these internal charges – which allege Mr. Bond inappropriately provided himself a salary increase and used STLKCCRC resources to make personal expenditures – are precisely what Mr. Gould demanded in his October 3, 2021 letter, and Mr. Gould has not disputed this fact.

Second, on March 10, 2022, a § 501 action was initiated by the Mid-America Council against Mr. Bond seeking reimbursement for unauthorized expenditures at STLKCCRC.  As discussed above, the Mid-America § 501 Action seeks over $4 million in damages against Mr. Bond and others and remains pending in this district.  According to the UBC, Mr. Gould expressly demanded that a § 501 action be brought against Mr. Bond, which is what the Mid-America § 501 Action is.  The UBC further asserts that investigations into the STLKCCRC and Mr. Bond's conduct remain ongoing with additional action being contemplated.

In light of the foregoing, the Court finds that Mr. Gould has failed to meet a § 501(b) statutory prerequisite in that he has not shown that after receiving his demand in October 2021, the UBC or its officers "refuse[d] or fail[ed] to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time."  29 U.S.C. § 501(b).

Although Mr. Gould did not file a reply memorandum and respond to the assertions in UBC's Memorandum in Opposition to Verified Application for Leave to File Verified Complaint

or the documents attached thereto, it appears to be undisputed that the UBC did conduct an accounting of STLKCCRC's records as Mr. Gould requested.  In fact, the investigation was being conducted at the time Mr. Gould sent his letter to Mr. McCarron.  Moreover, it appears to be undisputed that the UBC filed internal charges against Mr. Bond seeking reimbursement for improper and unauthorized expenditures, in addition to his expulsion from the union.  Again, Mr. Gould made this request in his October 3, 2021 letter.  And finally, it is undisputed that the Mid-America Council filed suit against Mr. Bond and others after Mr. Gould made his request.  Mr. Gould's assertion that the UBC, General Executive Board, and Mr. McCarron have refused and/or failed to sue or recover damages or secure a forensic accounting by a verified independent CPA or firm, or to seek appropriate relief within a reasonable time after his request was made on October 3, 2021, is not supported by the record.  Mr. Gould has not shown that the union failed or refused to make a legitimate accounting, sue or recover damages, or take other appropriate action against Mr. Bond.  As discussed above, Mr. McCarron and the UBC did in fact take against Mr. Bond, and those actions responded to demands in Mr. Gould's October 3, 2021 letter.  Mr. Gould has not satisfied the condition precedent to bringing a § 501 suit – that the union failed or refused to act on his demand.  Gould ex rel. of St. Louis - Kansas City Carpenters Reg'l Council, 1 F.4th at 589; Hoffman, 362 F.3d at 314; Coleman, 340 F.2d at 208.

**D.  Many of Mr. Gould's Proposed Claims Are Precluded by Collateral Estoppel**

As discussed above, Mr. Gould filed his proposed Verified Complaint without the assistance of counsel, and it is not a model of clarity.  It is not entirely clear from his allegations in proposed Verified Complaint exactly what alleged malfeasance by STLKCCRC officers forms the basis of his § 501 claims.  As discussed above, the allegations in Mr. Gould's Wrongful

16

Termination Lawsuit, his Initial § 501 Action, and his proposed Verified Complaint overlap significantly, and it is difficult for the Court to determine which allegations of malfeasance are background and which Mr. Gould intends to pursue.  While the Court declines to go through the litany of alleged malfeasance line by line, to the extent Mr. Gould is raising allegations of malfeasance that he raised in his Initial § 501 Action, they are barred by the doctrine of collateral estoppel.

In Mr. Gould's Initial § 501 Action, the district court determined that the UBC properly investigated and addressed Mr. Gould's allegations of malfeasance at STLKCCRC, a finding which was affirmed by the Eighth Circuit.  Gould ex rel. of St. Louis-Kansas City Carpenters Reg'l Council, 1 F.4th at 585 (finding "the [regional council] secured an accounting by an outside auditor that investigated every complaint in [Mr.] Gould's initial request and concluded that there had been no wrong-doing by the union.").  In other words, Mr. Gould's Initial § 501 Action decided the issue as to whether the union failed or refused to take appropriate action in response to Mr. Gould's request for an accounting to recover damages.  There, the court found Mr. Gould did not meet a perquisite of § 501(b), because the union appropriately responded to Mr. Gould's demand in a timely manner.  Id.  Because the court in the Initial § 501 Action decided the issue of whether Mr. Gould had met the prerequisites to bring a § 501(b) with respect to at least some of his claims of malfeasance, Mr. Gould is precluded from re-litigating the issue here.  Turner v. U.S. Dep't of Just., 815 F.3d 1108, 1113 (8th Cir. 2016) (affirming application of collateral estoppel to bar subsequent suit by the same plaintiff because determination regarding subject matter jurisdiction in prior suit involved application of the same legal standard).  To the extent Mr. Gould is attempting to allege § 501(b) claims based on the same malfeasance by

union officers that he alleged in his Initial § 501 Action, his claims would be precluded under the doctrine of collateral estoppel.  Riis v. Shaver, 4 F.4th 701, 704 (8th Cir. 2021) (doctrine of collateral estoppel "bars relitigation of an essential fact or issue involved in the earlier suit.").

### E.  Many of Mr. Gould's Proposed Claims Are Time Barred

Finally, a number of the allegations in Mr. Gould's proposed Verified Complaint date back to 2014 or earlier.  For example, Mr. Gould alleges the following: he "became aware of multiple violations and reported his concerns to [STLKCCRC] leaders from 2008 through 2014"; he "provided ample evidence of financial crimes to Mr. McCarron and the UBC in September of 2014"; "from 2008 through 2014" there were improper reimbursements; he "continued whistleblowing to his [STLKCCRC] Superiors about violations of multiple federal laws from 2008 until his termination in August of 2014" and provided copies of the same to "the UBC and Mr. McCarron in 2014; "[f]rom September 2014 through December of 2014, Mr. Gould continued to provide the UBC, Mr. McCarron, and the UBC representatives with details of STLKCCRC bosses breaching fiduciary duties ...."  (ECF No. 1 at 2, 4-6, 8-9).  Again, the proposed Verified Complaint is not precise, and it is difficult to decipher between background information and allegations upon which Mr. Gould intends to base his claims.  But to the extent Mr. Gould is attempting to bring claims that accrued prior to March 2, 2017, the UBC argues in its opposition that any such claim would be time barred.  The Court agrees.

There is no statute of limitations in LMRDA, and for § 501 claims, the Court is to apply the most analogous state statute of limitations.  See O'Hara v. Teamsters Union Loc. No. 856, 151 F.3d 1152, 1161 (9th Cir. 1998); Austin v. Trandell, 207 F. Supp. 2d 616, 623 (E.D. Mich. 2002).  The UBC urges the Court to apply Missouri's statute of limitations for claims of breach

of fiduciary duty or constructive fraud, which are governed by Missouri's general five-year statute of limitations. Mo. Rev. Stat. § 516.120; Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997) (en banc). In the absence of a more analogous state law claim, the Court concurs with the UBC that Missouri's five-year statute of limitations would apply. See Austin, 207 F. Supp. 2d at 623 (E.D. Mich. 2002) (holding that Michigan's statute of limitations for breach of fiduciary duties against corporate officers applies). Thus, any of the § 501 claims Mr. Gould seeks to bring that accrued before March 1, 2017 – five years prior to the filing of Mr. Gould's Application on March 1, 2022 – would be time barred.

### III. Conclusion

Mr. Gould seeks leave to file a Verified Complaint under 29 U.S.C. § 501(b) against Mr. McCarron for breach of his fiduciary duties in allowing others to misappropriate STLKCCRC funds. The Court finds Mr. Gould is precluded from bringing what is essentially a derivative suit on behalf of STLKCCRC and its members, because he is proceeding without the assistance of counsel. As a pro se litigant, Mr. Gould may bring claims that are personal to him, but he may not represent others in federal court.

In the alternative, to the extent Mr. Gould can bring suit on behalf of the STLKCCRC and its members, Mr. Gould has not met the prerequisites of § 501(b) in that he failed to allege or show that he demanded that Mr. McCarron or the UBC take action against the alleged malfeasance, and they failed to do so. The Court further finds that many of the allegations in Mr. Gould's proposed Verified Complaint are barred by the doctrine of collateral estoppel, as they are the same allegations that he made in his Initial § 501 Action. Finally, to the extent Mr. Gould seeks to bring claims that accrued prior to March 1, 2017, any such claim would be barred by the

19

applicable statute of limitations.  In sum, Mr. Gould has not met the prerequisites of § 501(b) and has failed to show good cause to file a Verified Complaint against Mr. McCarron for breach of his fiduciary duties.

Accordingly,

**IT IS HEREBY ORDERED** that Jonathan M. Gould's Motion for Leave to File Verified Complaint under 29 U.S.C. § 501(b) is **DENIED.**  (ECF No. 3).

**IT IS FURTHER ORDERED** that the above-captioned cause of action is **DISMISSED.**

The Court will issue a separate Order of Dismissal.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  14th  day of March, 2023.

20